Good morning. Craig Daly on behalf of Mr. Plumaj. This is sort of a classic case as to how you frame the issue is going to get you to a certain conclusion. On behalf of Mr. Plumaj, this is really a simple application of clearly established Supreme Court precedents in the Strickland v. Washington case. So, for over 25 years, the lower court, since Hill v. Lockhart, has been applying that standard, the two-pronged standard of Strickland, to guilty pleas. And it's our position that if this court applies that standard, that we will prevail. The Strickland standard is a general standard. It is a framework for which the United States Supreme Court has said will resolve all instances, all factual scenarios of ineffective assistance of counsel. And if we go back to the 60s and the 70s, when we deal with the trilogy of Supreme Court cases, Brady, McCarthy, and McRibody say that a plea, that in order for it to be constitutionally valid, must be based on proper advice and knowledge of the consequences of what the defendant is doing, not based on misrepresentations of the trial counsel. It's a good argument. Help me understand how we get around Chydez's statements about what Hill was about. In what respect? Well, the Supreme Court has never said that parole eligibility, which is just one of two issues here. We have parole eligibility and, more importantly, release. We have two questions here about what the lawyers said. Both have to do with parole. Pardon? Both have to do with parole. No, I think one has to do with parole eligibility and one has to do with release. Release would be just a parole. Yes, but there is a very important distinction here. Please answer her question. I was just quipping. I'm sorry. Okay. I don't mind you answering that because that's part of it. Yes. How can you make that distinction in order to say that you can meet an AEDPA standard? The United States Supreme Court has never said that parole eligibility was a category under the Sixth Amendment that was excluded. Right? So what's a clearly established federal law by the Supreme Court that you're depending on? Is it Strickland? Strickland and Hill v. Lockhart. That's the general framework for which we deal with the lower courts on all issues. And the Supreme Court has said that they're not going to decide the factual pattern for resolution of those issues. That's for the lower courts. They set the framework. They have never said that parole eligibility is a category for which the Sixth Amendment doesn't apply. They've never said that. Did they or did they not in Hill v. Lockhart explicitly decline to address the Sixth Amendment implications of bad parole advice? They declined to address that on the grounds? They explicitly declined to address it. That is correct. They hadn't addressed it yet. That's correct. But that doesn't mean because Strickland is a general rule, just like prosecutorial misconduct. And so the Supreme Court isn't telling the lower courts that in a specific factual pattern or specific facts that that's going to be excluded for Sixth Amendment purposes. But do you—what is your burden? Is your burden to show that the Supreme Court has not ruled adversely? Or is it your burden to show that the Supreme Court has established the coverage that you seek to fall under to protect your client? I think it's both. So the Supreme Court has never said that parole eligibility is excluded from Sixth Amendment protection. They haven't said it's included. They haven't said it's included, but that's a factual pattern. See, if the Supreme Court sets rules for the lower courts to decide, it's not up to the Supreme Court necessarily unless they decide. Like in Padilla, if they're going to say deportation is a specific fact category that we are going to say receives Sixth Amendment protection, then it's left to the lower courts to make that decision. Does that answer your question or not? If it doesn't, I'm— Because your argument is not a bad argument. That to tell somebody at variance with Michigan's law that they can get out in 15 years as opposed to 25 years would seem to me to be clearly poor advice. Well, it's not just poor advice. It's patently false advice. It's statutorily false. Correct. So the issue is when a trial lawyer says to a defendant to induce them to plead guilty, they give them patently false information. Does that fall within any clearly established Supreme Court precedent? And the answer is absolutely yes. I mean, not only— Even when the Supreme Court has said we haven't decided that issue. The issue being what, Judge Rogers? If you give categorically bad parole advice, that excuses you from the guilty plea. But the Supreme Court doesn't have to decide the factual— I'm just saying you could say that. It makes sense. But the Supreme Court seems to be saying that we haven't said that. But do—the question— And the argument would be that it's somehow collateral. It's not—that it's collateral to the— But Padilla says that we don't need to engage in that analysis. Didn't Padilla say we don't— Does Padilla apply to this case? I mean, Padilla was decided after the state court made its operative decision, wasn't it? Well, I think the answer to that is no. And I think the district court, when it brought it to their attention— Well, wasn't the district court wrong on that under Green v. Fisher? Well, this would be an interesting conversation about what constitutes the merits of the adjudication of the state court. And so if we start with the Supreme Court, which is where we appealed from, that is not a merits adjudication because they said they wouldn't review it because they didn't think that the issue was sufficient. That's what we appealed from. The Michigan Court of Appeals said in one sentence that they were not going to address the issue on the merits. So you go back to the trial court, right? You go back to the trial court because it's not a— The trial court made its decision. Padilla hadn't been decided yet, right? So we don't have a merits adjudication. That's the point, Judge Rogers. So this is really a de novo review because the trial judge never addressed ineffective assistance of counsel. You're saying that EDBA doesn't apply here because there was no decision by the court of Michigan or courts on this issue. Correct. That's what you're saying. Yes, I am saying that the Michigan courts never addressed the merits of the ineffective assistance of counsel. How do you get around Harrington? I'm sorry? How do you get around Harrington's presumption that merits were addressed and the Michigan trial courts finding that the lawyer's promise was less than persuasive in terms of the outcome of the case owing to the enormous benefit? Do you not then have some sort of merits determination? I don't believe so because when we look at the Court of Appeals' one-sentence line that's not reasoned or explained, we go through the look-through documents. Yeah, except for Harrington says you've got to posit it for them, doesn't it? Well, it says that under Harrington, Richter and Harrington says that that creates a presumption. It's not conclusive. And because it's not reasoned or explained, we go back to the trial court, right? And I think what's important about the trial court. What did the trial court do? The trial judge never addresses ineffective assistance explicitly. He never says anything about Strickland. He doesn't talk about the two prong. But what he says, and if I can quote for the record, he's not talking about himself. A reviewing court should take a dim view of what the defendant says his lawyer told him, end quote. We assume that's the relevant decision in determining whether Padilla applies. Just assume that for the moment. Then what's your argument? Well, the argument is that the district court correctly assessed what the state court did wrong. What the state trial judge did is he only addressed Mr. Plumage's affidavit. He did not address the affidavit of the appellate lawyer at the time who spoke to the trial lawyer and said, I spoke to Mr. Chambers, and Mr. Chambers told me two things. And I can't emphasize how this is important because there are two aspects of the factual basis of the ineffective assistance. The trial lawyer, Mr. Chambers, told the appellate lawyer that even though the sentence agreement was 25.5 to 35, look at Mr. Plumage, don't worry about that because you're actually going to be eligible after 15, and you are likely to be released at 15. And that second part is what brings it outside of the whole question of, is parole eligibility a collateral or direct kind of analysis? We really don't have to engage. Why does the second, why does that second statement bring you out of that? It seems to me that it may be the first statement that brings you out because that is a statement that is wrong as a matter of Michigan statutory law. So why wouldn't that be more likely to take you out of collateral consequences? You know, the promise, oh, I know the parole board, you're going to get out. All of that stuff is readily assignable to collateral status. But how can it be collateral when someone tells you incorrectly on the statute? I mean, why isn't that your better argument? What the sentence is. What the sentence is. Told you the wrong sentence. What the sentence is as opposed to saying what's going to happen when some other body looks at this sentence. I agree with both of you, Judge Rogers and Judge Strauss. I'm asking a question. Oh, I'm sorry. Well, I mean, the essence really is for a defendant who's pleading guilty, the question that they want to know is when am I going to get out, right? So when the lawyer says on the day of trial, as he did here, and the defendant says I'm going to trial and I'm innocent, and the lawyer says don't worry about this because not only will you be eligible, but you're likely to get out, and that is contrary, and everybody agrees. This is patently false advice to the defendant that induces him to plead guilty. Maybe I missed something. The question isn't is it patently false. You can say something patently false about something that's very collateral, or you can say something patently false about something that's collateral. Its falsity doesn't make it collateral. What makes it collateral? To me, what makes it collateral appears to be whether it's a decision that's being made about your sentence or whether it's a decision about how some other body is going to interpret the sentence. It seems to be what they're saying in Chydes. It's not part of a collateral matter. It's not part of the criminal proceeding. So what the attorney general does in immigration context, that's collateral because it may determine that it's collateral. What some parole body does somewhere, maybe the parole rules will change. We don't know. So they just look at the sentence, and then they make their parole decision as opposed to a decision in the heart of what the sentence says. That's not collateral, you could argue, right? I wonder if the cases support that distinction. I understand the distinction. I wonder if the cases support it. That support the distinction regarding what? I'm sorry. I'm sorry? I'm not sure I understand what your question is. I'm wondering if there's case support for drawing that kind of distinction, a distinction between collateral in the sense of another body is figuring out what to do with the sentence. The parole board. It could be the parole board or it could be the immigration people. It could be the people who determine whether he gets hired or somebody. All those are collateral effects. But if when I sentence you, I sentence you to do three years of this and two years of that, that's not collateral, you could say. That's what the sentence, that's the content of the sentence. I think what Judge Strange is suggesting is that if it's a statutory limit on parole, that becomes part of the sentence, not a collateral aspect of the sentence. It's just integral to the sentence, a limit on the sentence or its expansion. It's a limit on a limit on the sentence. It's a part of it. It's integral to the sentence. I think the distinction might hold up, but I'm wondering, my question is, maybe it's a hard question to ask you because it's hard to articulate the distinction, is whether the cases would support that. When the cases talk about collateral, can they all be distinguished that way? Well, I think that if you try to take one part of this case, which is parole eligibility as opposed to release, and you try to pigeonhole it into either direct or collateral, I think we're headed down the wrong road. But let me just say this. You don't head down that road, you head towards the… How do you get around it? You head towards the affirmative road. Okay, so if I'm a defendant and I'm thinking that a sentence imposed by the judge is 25.5 to 30, but my lawyer is telling me that the parole board is going to say it's going to lop off 10.5 years, I'm going to believe my lawyer and I'm going to… See, the difference there is that the lawyer then is speaking in the kind of advisory capacity that suggests that I know this, I think this, here's your best chance, versus what your claim I thought was is that when the lawyer says to me, okay, Mr. Defendant, you've got a 25-year sentence, and under the laws of Michigan you can get out in 15. That is absolutely incorrect. How can that not be a part of the sentence itself? Even if all of this other advisory stuff is collateral, we don't care what the law is on collateral issues like that. If, in fact, you can pigeonhole your case into saying when the lawyer advises a statutorily incorrect sentence, that is part of the sentence, period. We don't reach collateral consequences. We are in Strickland heartland, and either he was right or wrong, ineffective or not effective. So what Judge Rogers is asking you is what case law do you have that would pigeonhole that sort of improper advice into the sentence, and we don't have to deal with the Chydez evaluation of what Hill says regarding collateral consequences. There's a whole series of cases, including Supreme Court cases, that says when the lawyer misadvises the defendant about his consequences, that that's ineffective assistance. And I think I tried to make that clear right from the beginning. I think maybe the question ought to be asked the other side. Maybe perhaps. What's the flip side of it? Your time is up. Okay, thank you. Okay. Good morning, Your Honors. Lizza Rivard appearing on behalf of the warden. I'd like to first start off by saying that this is a classic case of buyer's remorse. Mr. Plumage, while released on bond from killing a man by hitting him with a truck on icy roads, decided that he was going to forever silence another man who was going to implicate him by shooting a woman in the head. We get it. The facts are nasty. I mean, what can we say? The facts are bad. To answer your original question, Richter does apply to the Michigan Court of Appeals decision. That decision was decided, and it said they were denying the application for lack of merit in the guns presented. So we're under AEDPA. Let's all agree on it. We're under AEDPA. Padilla does not apply under Green because Padilla was decided March the following year. And Chydez's footnote about what Hill says shouldn't apply either because Chydez came after this case as well, correct? Not correct. Chydez's footnotes clarified that Hill does not, that footnote clarifies that there is no clearly established Supreme Court precedent on the question of, one, whether advice regarding a collateral consequence falls under the ambient of the Sixth Amendment Strickland analysis, and, two, whether or not parole eligibility is a collateral consequence because those questions have not been answered clearly and clearly established by the Supreme Court under Woods v. Donald. So the question then becomes, is there case law that would suggest that a admitted error on a statutory sentence is not a collateral consequence? It is, in fact, a part of the sentence itself. I have not found case law on that direct point, Your Honor. And do you have case law that goes the other way, that suggests that it is, that you can, that a lawyer can look a defendant in the eye and say, your sentence under the law is 50 years, but I'm telling you that 5 years is what the actual sentence will be, and that that's not ineffective assistance. I don't have a direct case on point for that, but what I would do is guide this court towards the published decision of King, which stated that... King, I'm sorry. King v. Dutton. It was a published decision, and that addressed the question as to whether a sentence that was enhanced, now this is going to your point, whether a enhancement of, you know, a change in the sentence. I'm sorry, is this a Supreme Court? No, this is a case by the circuit, a published case by the circuit. If you're in the circuit law, you may have problems here, because don't all the circuits agree that it's ineffective assistance to give the kind of advice that was given here? I mean, my count is 4th, 8th, 10th, and 3rd Circuit would suggest that gross misadvice concerning parole eligibility is a violation of strictly, and the 5th, 11th, and 1st Circuit confirmed that possibility. Well, what I would then do is point this court towards McAdoo. And in McAdoo, the defendant tried, one, to characterize advice by counsel as going from a collateral to a direct consequence, as what Mr. Pulumag is trying to do here. This court rejected that. What are the facts of that case? And you're back in 6th Circuit law? I'm back in 6th Circuit law, because there is, again . . . I'm trying to figure out if this is a viable distinction, and it may or may not be. If there are cases where, when the Supreme Court talks about collateral consequences, it's referring to cases that have included cases like this, then you have a much stronger case than if they don't. Well, I think the footnote in Chavez makes it clear that the Supreme Court has not decided those questions. Chavez also says that collateral means not part of the criminal proceeding. Exactly. So I can easily see what the immigration people do, or what the standards that the parole authority applies are not part of the criminal proceeding. They're part of some other proceeding that maybe takes into account what the sentence was, and benefits or hurts the defendant using that information. It's a little bit different, arguably, but I'm not sure if the difference is enough. It's arguably different if it's part of the sentence. If the sentence says, you shall get parole on the 33rd year, and that parole will last until the 36th year, and then your parole will be done, and that's in the sentence, it's hard to say that that's collateral anymore. Right? Is that true, at least? Well, I would point the court towards the definition of collateral consequence in King. What about the one in Chavez? It says not part of the criminal proceeding, right? Exactly. That's why I'm saying, why isn't that what I just described? If I'm following you correctly, Your Honor. Well, I'm just trying to draw the distinction between the court, for instance, gives a sentence in the federal court, it would be 12 years in prison and 3 years of supervised release. Other bodies can't change that. Other bodies can't say, well, we're going to only have 2 years of supervised release. That's the sentence, right? Now, if it was a state version of that, and there was a parole board which had some discretion to lessen that, but we don't know what criteria they're going to be applying 3 years from now, that you would say is collateral because it's not part of the criminal proceeding. It's part of the parole proceeding. And the same with the immigration authorities. They may say, oh, you get deported if X and Y kind of crime, and now we've changed it to a Y and Z kind of crime. That would be collateral because it's a different proceeding. It's not part of the criminal proceeding. Exactly. What is, I would think, part of the criminal proceeding is the content of the sentence. How long you're going to be in jail. Which is what the trial court clarified to the defendant. He informed him that he was going to face the maximum of life if he didn't plead to these charges. He then told him, your minimum sentence is 25 1⁄2 years. At no point did Mr. Plumage cry foul and say, wait, my attorney just told me I was going to get out in 15 years. Are you saying that the advice by the court trumped what the attorney told you? That's exactly what I'm saying, Your Honor. What's your best case for that issue? Well, based on the Supreme Court case law about how we look at, and this is, again, kind of interrelated to the due process of the voluntariness of the plea, but we look at the plea colloquy to determine what was said, what the defendant said there. He said there was no other promises made to him. And this advice by counsel was, in effect, an implied promise that he was going to get out in 15 years. That argument would apply regardless of whether it was collateral or not, right? I agree. So you're going past the collateral, you're just sort of assuming for the sake of argument that it was not collateral. Exactly. I'm struggling a little bit with that because what the court said in the plea colloquy was, your sentence is 25 years to 38, 25 and a half to 38 and a quarter. I mean, it was a range, correct? Yes. And that was what he said, this is your sentence. Now, the question becomes, how does state law define that? In Michigan, state law says the bottom number is the floor. You are going to serve that no matter what. That may not be true in Tennessee. Tennessee, the statutes may say you can earn good time and it can be used against this sentence, and the bottom is not the floor. So why isn't it a part of the sentence itself when an attorney says, in the state of Michigan, when you have this kind of a range, the bottom may go down. And I'm telling you, in Michigan, the bottom does go down. It goes down to 15 years. Why is that not the advice on the nature of the length of the sentence itself? All right. I'm going to take a step back here, and I'm going to say, going back to Strickland, because we all agree Strickland is what applies. I'm going to say he has not met his burden under Strickland to show deficient performance. He has his, what we would call an incredible affidavit about what happened during the plea colloquy. The trial court clearly did not find that credible, and those credibility determinations are binding on this court under Marshall v. Longberger. But the district court found that that was already resolved, didn't it? Say that there's no dispute about it, that this is what was given. Well, actually, there is a dispute. We are disputing the context of this advice. He did not provide any affidavit from trial counsel about what actually happened. But he got one from appellate counsel and for himself, right? He got one from appellate counsel. And if you wanted to contest it, you could have put in, you could have contacted chambers and put in an affidavit that opposed it, or you could have requested or the court could have granted what one would have expected in this case, an evidentiary hearing on ineffective assistance. I would caution the court to not shift the burden to the state to prove deficient performance. Strickland is very clear, and the Supreme Court also made it very clear in Titlow, and that amounts to a shift. Why isn't an unopposed affidavit the evidentiary basis? Because, like I said, in this case, his affidavit is refuted by his plea colloquy. The trial court, when it looked at the merits of the decision— The plea colloquy says promises, right? Correct. And this is an implied promise by counsel that you will get out in 15 years. And so what I would suggest is that appellate counsel's affidavit is vague. While he may have said these words, we don't know the context of those words. If he was explaining to the defendant in the context, which is correct under Michigan law, that if he was looking at the maximum of a second-degree murder conviction, which is parolable life, then under Section 7 of one of the statutes, he would have been eligible for parole under 15 years. So our argument is that his fatal flaw is by not presenting an affidavit from trial counsel to support what actually happened, given the issues of his credibility from his affidavit based on the plea and, again, based on the trial court's assessment. Counsel, I think a perhaps stronger argument would be that there's no prejudice. Can you deal with that issue? Yes. He maintains that he was innocent throughout. He, in open court, which is all that the Supreme Court requires, he was facing two- I'm more concerned with his question of whether he would have pled guilty if he'd known that he had 10 more years than he thought he had. Assume for the moment all of these things we've been arguing about, just so that we can ask the question, not that we would disagree with you, but assume all of that away, that there's a violation, that there's a violation, and as a result, he thought that he was going to get out after 15 years instead of 25 years. But the argument then is, I'm wondering if the argument then will hold water, that because 25 was such a better deal than he would have gotten without the plea, that he would have done that anyway. Do you make that argument? Yes. He was facing two- You make that argument on appeal, right? Yes. He was facing two life sentences in the murder case, one for the murder charge, one for the assault with intent to murder. And all of these were based on an aiding and abetting theory. And under Supreme Court precedent, circumstantial evidence is just as constitutional as direct evidence. I understand that. And that makes sense to me, and may be dispositive, but what do you do with the counterargument that the issue is not whether a reasonable person would have gone to trial, but whether this person would have gone to trial? This person, there's a lot of evidence that he was stubborn and wanted to go to trial, and waited until the last minute, and on and on and on. How do you deal with that? What is the standard? Is it what a reasonable person would have agreed to, or is it what this person would have agreed to? That is a good question, and I think- That's why they pay me, you know? In Maples, this court looked at Hill and said that we have to look at the affirmative defenses that he would have raised. And from what I gather from Petitioner's brief is that he's alleging that he had no part in this. And I think that is refuted when you look at the testimony. The only testimony we have is at the preliminary exam, where we have two eyewitnesses to the events that happened afterwards. If he could, hypothetically speaking, if he could compellingly demonstrate that no matter how stupid it was, he wanted to go to trial, as long as losing would send him to more than 20 years. He said, you know, in the 20th year, he wanted to be out, and so he might agree to it. I think we can't- Tell her, Highwater, if you could show that, even though a reasonable person would take the plea, isn't the law that he gets the right to do that? I don't think this court can ignore the great benefit that he received, though. I think that's part of- I think the benefit would suggest what he would have done, not-the benefit is useful not because a reasonable person would have taken it into account, but the benefit is useful because that's what he probably would have taken into account. Is that the correct analysis, or is it not? That's what I'm asking. It's a legal question. Honestly, I don't know the answer to that. From what I was viewing, and I see my time is up, but from viewing the cases, you know, I look at the totality of the circumstances to answer that. You know, what was his benefit? What was his defense? You don't look at how persistently he insisted on going to trial? The record doesn't show any persistence. Ask him about what to look at here. I'm asking the legal question. Cases don't look at how persistent these people are? Because if they do, that doesn't go to what a reasonable person would do. That goes to what this person was doing. And if this court would like supplemental briefing on what the Supreme Court cases say on that point, I would be happy to offer. Wouldn't that have to be considered in the totality of circumstances? It could be a possibility. Again, you know, I'm not. I mean, how could it not? Otherwise, what would happen at the appellate level is everyone would sit as, the judges would sit as a super negotiator and say, good enough deal, you weren't prejudiced. But it would seem to me that the issue is about your right as an individual to stand trial for the charges against you. And didn't this defendant turn down a plea bargain the day of trial before he accepted this one? From what I can understand from the record, it looks like there was an original plea offer made. I do not know the contents of that offer. What we do know is the contents of this one, which is what he pled to. But I would say that the Supreme Court has cautioned against just setting aside these pleas willy-nilly because they are very much in general. The hard balance, of course, is that the right to stand trial before a jury of your peers is what we're talking about. And wouldn't that have to be the right chosen or given away by the defendant? That is entirely his right. And we have to look at what he was facing at the time as well. As part of everything. And at this point, this co-defendant had pled guilty and was now going to potentially be a witness against him as well. So I think that is part of the analysis as to what he was facing, the strength of the prosecutor's case, et cetera. I have one question. Oh, okay. Colleagues, if we disagree with you, if we were to disagree with you on the collateral issue and on the prejudice issue, that would involve a remand rather than a decision. Correct. A remand and then there would be evidence taken on exactly what did happen and what or not. No, the evidence you're hearing on this point is barred under pinholster. What would happen is the relief and remedy under Magana v. Hoffberger is a remedy for a new plea hearing to be held, to re-offer the prosecutor to re-offer the plea. And evidentiary hearing is barred. On this question of what he would have done, the district court can't have a hearing in that? They cannot, Your Honor, because the Michigan Court of Appeals addressed and disposed of this claim on the merits in its August 2009 decision summary order, which is entitled the EDPA deference under Richter, and evidentiary hearing is barred under pinholster. So it would be essentially a granting of the habeas petition, and the relief instead of a new trial is going back for a new plea hearing for the prosecutor to re-offer the plea. So our review is totally de novo of whatever the district court said? It's de novo of the district court. And, again, under Richter, it's not looking through? You either have to give them relief or not is what you're saying. Correct. And, again, I just want to emphasize that under Richter, because it's a summary order, this court has to look at any reasonable possibility for that state court's denial, not necessarily looking through to the trial court's decision. So the plea is re-offered and the hearing is what? It's essentially a plea colloquy. It's a re-offering of the plea and then, you know, going through. And at that point, the defendant can stand up and say, I don't want this, or now that I know it's 25 years and not 15, I am not willing to accept this. It depends on what the prosecutor decides to re-offer. I don't know. By the current terms. So it would depend on what the prosecutor decided to offer, taking into account several considerations. So it sounds to me like you're talking about a complete, as we say, do-over. That's what I read Magana v. Hoffberger to say. And then, you know, they do go into whether or not if the prosecutor offers more, you know, a heavier sentence, you know, then they have to show, you know, why that's not. I forget the words. Yeah. But, yeah, they have to show that that's not vindictive. Yes. But that, from what I understand, would be the remedy, not just saying you have to go to retrial. And, again, based on the circumstances of this case, I would strongly urge this court to not take that path based on the edpa deference applied due to the fact that this defendant is, you know, the record shows he's notorious for, you know, the witness tampering that's evident in the preliminary exam, you know, and that he's essentially taking out individuals who are witnesses to his prior crimes. So at this point, unless the court has any other questions. Thank you. Did you want supplemental briefing on that? We will tell you if we do. All right. Thank you, Your Honors. So let me see if I can condense three issues in three minutes. Prejudice, whether or not this should be an evidentiary hearing, and the question of whether or not this is simply a collateral issue. Try the second one first. That's your favorite issue. I understand. Any issue about whether there's a hearing or not. The evidentiary hearing. Okay, so you can remand this for an evidentiary hearing before the district court because. . . It would have to go back to the trial court, right? Well, eventually. . . Because the district court has already said that he's not entitled to a hearing. That's correct. That's correct, Judge Seiler. He did decide that. Eventually, it would go back to the trial court. For the defendant to have this offer made back to him and make a decision whether or not he's going to accept it, that's correct. There's no more evidence that can be taken anywhere as to what he would have done or as to if he had known this information at that time. I think the record is. . . Or even that there's dispute as to whether he was even told this. I don't think that's. . . That can't be further examined in any hearing at any level, is that right? Well, this is what the district court did. That's a yes or no question. Restate the question so I can answer it. Okay, thank you. There was some question about whether in fact this misinformation was given. The only people that challenged. . . There's this kind of testimony and that kind of testimony, but not the other kind of testimony and not this other kind of testimony. One result in some systems might be to get some more information on that, on the theory that there isn't enough evidence to reach conclusion X as opposed to Y. But what I'm taking from both of you is that no matter what we do, we're just limited to the facts we have so far in order to make that determination. That's my question. Well, the district court did make a determination. So the standard for you is clearly erroneous. The federal district court. . . The federal district court said the state court record are the affidavits of Mr. Plumage and his lawyer. We review that to no vote. Not his finding of facts because he accepted that as being true just as the Supreme Court did in Padilla. Remember when Padilla looked, the Supreme Court looked at the affidavits, whatever it was, the record, they assumed that the representations, the misrepresentations made by the lawyer were true. And then they eventually sent it back on the prejudice issue. And the district court did the same thing here. It made findings of fact that the state court record was the two affidavits unrebutted by the state. As Judge Strawn said, they could come back in that regard. But the district court found no prejudice, right? Well, I think that the district court sort of punted on that, Judge Seiler. When the judge, Judge Lawson, got to the issue of prejudice, really didn't address it and instead said, I don't think that there's any clearly established federal law on this issue. It really doesn't. . . he sort of stops at that point and really doesn't get to that. So you could remand it back to the district court for finding on whether or not there's prejudice. I think that that's one of the things you could do. We could find that just as well as the district court, right? Pardon? We could find it as well as the district court. The district court didn't have anything different from what the record is. You could. You could. It didn't have any testimony. Right. But let me address the prejudice thing for just a moment because we talked about this and Judge Strauss started with the correct analysis is that this is a defendant that always insisted on going to trial. And on the day of trial, the prosecutor says, I have an offer, and he says, I'm not going to take that. He rejects it. And in his affidavit he says, I'm innocent and I'm not going to plead guilty. And I think circumstantially there are two things on prejudice. One is if the judge is saying your sentence is 25 and a half to 35, but your lawyer is cutting off 10 and a half years, that's the inducement. That's what really shows the prejudice because now Plumage is saying to himself, instead of doing a life sentence without parole, I don't have to do 25 and a half. All I have to do is 15. And that's really the key. And how many times I've said this is not simply a case of parole eligibility because the lawyer is saying not only will you be eligible at 180 months, 15 years, you are likely to be released. And that takes it outside of the whole collateral thing because the lawyer now is bringing the sentence into the integral part of what the defendant is expecting. It just seems backwards to me. It seems like he's bringing in something collateral. It's not. I'm sorry. I distinguish what a parole board would do from what you inform a defendant is the content of his sentence. I don't disagree. The content here. But you're arguing sort of the reverse. Well, it's not the reverse only because I come from it from an ineffective assistance of counsel. What I'm starting with is what the lawyer says as opposed to what the trial judge says. So if the inducement comes from the lawyer to get him to plead because he's chopping off 10 and a half years, that's why it falls within Strickland. And the whole analysis about whether it's collateral or not really isn't relevant to the discussion here. Okay. Are there any other questions? No. I don't think so. Thank you very much. Case will be submitted.